Providence,
 

 Dtjefee, C. J.
 

 The defendant contends, in support of the demurrer, that it is the policy and design of our statutes to confine the benefit of the oyster fisheries of the State to the people of the State, and that, therefore, any contract which attempts to secure an interest in the fisheries to citizens of other States is a fraud on the statutes and for that reason void.
 

 The legislation on the subject is contained in Gen. Stat. R. I. cap. 132 and cap. 133. Cap. 132 relates to the free and common oyster fisheries. It provides that “ no person not a citizen of this State shall be allowed to fish for oysters or other shell-fish within the waters of this State,” and it prescribes a penalty for the violation of the provision. Cap. 133 relates to private and several oyster fisheries. It authorizes the shell-fish commissioners to lease, in the name of the State, to any person, being an
 
 inhab
 
 
 *392
 

 itant in the
 
 State, any piece of land within the State, covered by tide-water at low tide, and not within any harbor line, to be used as a private and several oyster fishery.”
 

 The effect of this legislation- is undoubtedly to secure the benefit of the fisheries primarily to the people of the State. We see little reason to doubt that this was the designed effect. The statutes, however, do not expressly prohibit the citizens of other States from acquiring, through' the citizens of this State, a derivative benefit or emolument. If any such prohibition exists, it exists by implication. And when we consider how easily the prohibition might have been expressed, and how probable it is that it would have been expressed if it had been intended, we do not think it is to be lightly implied.
 

 There is no reason to suppose that the object of the statutes was to confine the consumption of Rhode Island oysters to Rhode Islanders for the purpose of cheapening them. Oyster fishing in Rhode Island is an important industry, and, with free exportation, it is capable of very great extension. The State is interested to extend, not to restrict it. Indeed, we do not know that the right of our oystermen to export their oysters has ever been questioned. But if the lessee of a private fishery has the right to export and sell his oysters, why has he not also the right to contract with a citizen of another State to sell to him for consumption, out of the State, the product of his fishery, while it is still growing in 'its bed, and thus vest in him an equitable interest in it? We find it impossible to say it cannot be done. But if this can be done why can he not also contract, for a valuable consideration, to allow a citizen of another State to plant his fisheries with oysters, and to grow them there, and gather them in their season for exportation and consumption abroad ? We do not see why it cannot be done. But if it can be done, then this bill can be sustained, for it is,what the defendant has done.
 

 The defendant is not a mere naked trustee who holds the lease of his fishery for the complainants without any possession or control of it or any beneficial interest in it. He remains in possession óf- the fishery, superintending its cultivation and management, and receiving for his services as lessee and superintendent a handsome compensation. He makes a profit out of his
 
 *393
 
 lease under tbe contract, and probably a larger profit than he could have made without it. . There is nothing in the contract which violates the letter of the statutes. The complainants, relying on it and on the defendant’s good faith,' have planted the fishery at a heavy expense. The defendant has, in consequence, in his possession a large amount of property, which, if the contract is illegal, and the complainants without remedy, he can appropriate to himself, thus perpetrating a monstrous fraud. If the complainants were Rhode Islanders we should not hesitate a moment to enforce the contract. The defendant says the contract is illegal because they are not Rhode Islanders. The court ought to be full satisfied of the illegality before it refuses on that ground to enforce it. The court is not so satisfied.
 

 The defendant calls attention to the provision'
 
 “
 
 that no person not a citizen of this State shall be allowed to fish for oysters or other shell-fish within the waters of this State.” The provision is contained in the chapter relating to free and common fisheries, and, notwithstanding the generality of its language, we think it applies only to those fisheries. The words “ fish for ” more fitly describe the act of raking for native oysters, scattered over the common grounds, than the act of taking up oysters which have been planted and propagated in private beds. The private fisheries are protected from depredation by severe penalties and punishments which are peculiar to them. Finally, we cannot conceive why the lessee of a private fishery should not have the same freedom to employ whom he chooses to take his oysters as he has to dig his potatoes.
 

 The defendant calls attention to section 14 of chapter 133. This, section declares that the oysters planted or growing in private grounds “ shall be the private personal property of the lessee,” and that stealing them shall be larceny. The obvious purpose of the section is to make it clear that the oysters are
 
 personal
 
 property, and to throw over them the protection which is appropriate to such property. It was not intended to restrict the right of disposing of them by contract or otherwise. At most it merely confines the
 
 legal
 
 title in the oysters to the lessee while they are in his grounds.' It does not prevent his disposing of rights which can be protected in equity. . If it did, a contract like that in suit would be invalid, even though it was entered into with Rhode Islanders.
 

 
 *394
 

 A. A. D. Payne
 
 and
 
 Colwell
 
 ¿f Colt, for complainant.
 

 Miner Poellcer,
 
 for respondent.
 

 The defendant contends that tbe contract violates the supreme law of the State, to wit, the Constitution. He refers to section 17 of article 1, which declares that “ the people shall continue to enjoy and freely exercise all the rights of .fishery and the privileges of the shore to which they have been heretofore entitled under the charter and usages of the State.” He contends that the effect of this is to confine the fisheries exclusively to the people of the State. In
 
 State
 
 v. Cozzens, 2 R. I. 561, this court sustained the constitutionality of a statute, like that now in force, for the creation by lease of private fisheries. This covers the case at bar. For if such fisheries are constitutional, then it is not unconstitutional for the lessees, while retaining them, to deal with them, and with the product of them, as they deal with their other property, subject of course to the restrictions of the law and of their leases.
 

 The demurrer is overruled. Whether relief shall be administered in the form in which it is prayed for, or in some other form, we will decide on further hearing.
 
 Demurrer
 
 overruled.